UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**F I L E D**

JAN 19 2022

CLERK'S OFFICE
DETROIT

UNITED STATES OF AMERICA,

Plaintiff

v.                                        Case No. 22-30021
                                          Originating No.21CR00521

**ANTHONY JOSEPH CARLSON,**

Defendant.

_____/

## GOVERNMENT'S PETITION
## FOR TRANSFER OF DEFENDANT TO
## ANOTHER DISTRICT AND SUPPORTING BRIEF

Pursuant to Rule 5(c)(3)(D) of the Federal Rules of Criminal Procedure, the

United States of America hereby petitions the Court for an order transferring defendant

**ANTHONY JOSEPH CARLSON,** to answer to charges pending in another federal

district, and states:

1.    On **January 19, 2022,** defendant appeared voluntarily in the Eastern District

Michigan in connection with a federal arrest warrant issued in the **Central District of**

**California based on an Indictment**.  Defendant is charged in that district with violation

of **18 USC Sections 1329, 1030(a)(2)(c), 1028(a) – Conspiracy to Commit Wire**

**Fraud, Unauthorized Access to a Protected Computer to Obtain Information and**

**Aggravated Identity Theft.**

2.  Rule 5 requires this Court to determine whether defendant is the person named in the arrest warrant and is entitled to a preliminary examination as described in Paragraph One above.  *See* Fed. R. Crim. P. 5(c)(3)(D)(ii).

WHEREFORE, the government requests this Court to conduct transfer proceedings in accordance with Rule 5 of the Federal Rules of Criminal Procedure.

Respectfully submitted,

DAWN N. ISON
United States Attorney

s/David Portelli
DAVID PORTELLI
Assistant U.S. Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226
(313) 226-9100

Dated: January 19, 2022

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | | CASE NUMBER: |
|---|---|---|
| | Plaintiff(s) | 2:21-CR-00521-1 |
| vs | | |
| Anthony Joseph Carlson | | **WARRANT FOR ARREST** |
| | Defendant(s) | |

TO:     UNITED STATES MARSHAL AND ANY AUTHORIZED UNITED STATES OFFICER

**YOU ARE HEREBY COMMANDED** to arrest <u>Anthony Joseph Carlson</u> and bring him forthwith to the nearest Magistrate

Judge to answer to a(n): ☐ Complaint   ☐ Indictment   ☐ Information   ☒ Order of Court   ☐ Violation Petition

☐ Violation Notice charging him with: (ENTER DESCRIPTION OF OFFENSE BELOW)

Violation of Pretrial Release

in violation of Title   18   United States Code, Section(s)   3148

Kiry K. Gray
NAME OF ISSUING OFFICER

Clerk of Court
TITLE OF ISSUING OFFICER

*Margo Mead*
SIGNATURE OF DEPUTY CLERK

January 19, 2022, at Los Angles, CA
DATE AND LOCATION OF ISSUANCE

By:
NAME OF JUDICIAL OFFICER

### RETURN

THIS WARRANT WAS RECEIVED AND EXECUTED WITH THE ARREST OF THE ABOVE-NAMED DEFENDANT AT (LOCATION):

DATE RECEIVED

NAME OF ARRESTING OFFICER

DATE OF ARREST

TITLE

DESCRIPTIVE INFORMATION FOR DEFENDANT
CONTAINED ON PAGE TWO

SIGNATURE OF ARRESTING OFFICER

G-04 (10/15)

WARRANT FOR ARREST

PS 8
(Rev. 1/19)

```
                                    FILED
                           CLERK, U.S. DISTRICT COURT

                              1/19/2022

                           CENTRAL DISTRICT OF CALIFORNIA
                           BY:     kss        DEPUTY
```

# United States District Court

for

CENTRAL DISTRICT OF CALIFORNIA

U.S.A.  VS.  Anthony Joseph Carlson                    Docket No.:    2:21-CR-00521-PA-1

### Petition for Action on Conditions of Pretrial Release (Warrant Request)

COMES NOW JEFFREY THOMASON, ACTING CHIEF PROBATION & PRETRIAL SERVICES OFFICER OF THE COURT, presenting an official report upon the conduct and attitude of Anthony Joseph Carlson, who was placed under pretrial release supervision by the Honorable ALEXANDER F. MACKINNON, sitting in the Court at Los Angeles, California, on the 8th day of December, 2021, under the General Conditions of Release and additional conditions as listed on the attached District Court's Release Order and Bond Form (CR-1).

## RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:

(SEE ATTACHED)

**PRAYING THAT THE COURT WILL ORDER** issuance of a Bench Warrant addressed to any United States Marshal or any other authorized officer within the United States of America, requiring the detention and return of Anthony Joseph Carlson before the United States District Court at Los Angeles, California, to show cause why his bond should not be revoked.

THIS IS A NO BAIL WARRANT

ORDER OF COURT

Considered and ordered this 19th day of Jan., 2022 and ordered filed and made a part of the records in the above case.

_____
United States District Judge
HONORABLE PERCY ANDERSON

I declare under penalty of perjury that the foregoing and/or attached is true and correct to the best of my knowledge.

Executed on January 19, 2022

_____
ILEEN RODRIGUES
U.S. Probation & Pretrial Services Officer
Place:  Los Angeles, California

U.S.A.   VS   Anthony Joseph Carlson
Docket No    2:21-CR-00521-PA-1

---

**RESPECTFULLY PRESENTING PETITION FOR ACTION OF COURT FOR CAUSE AS FOLLOWS:**

1. On December 1, 2021, the defendant submitted a drug test which yielded positive results for amphetamines and benzodiazepines.
2. On December 15, 2021, the defendant failed to comply with the Court orders in Oakland County, Michigan, by failing to appear for his probation violation hearing and clearing his warrant as ordered by this Court.
3. On January 13, 2022, the defendant left his residence without permission.
4. On January 15, 2022, the defendant tampered with his location monitoring device.
5. On January 15, 2022, the defendant failed to return home by his curfew.
6. On January 17, 2022, the defendant's location monitoring device was removed without permission.

```
                                    FILED
                           CLERK, U.S. DISTRICT COURT

                               11/09/2021

                           CENTRAL DISTRICT OF CALIFORNIA
                           BY:____DM____ DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2021 Grand Jury

| UNITED STATES OF AMERICA, | CR 2:21-cr-00521-PA |
|---|---|
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. |
| ANTHONY JOSEPH CARLSON, aka "A.J.," aka "Ajay," and CALVIN ANDREW WESTBERG, | § 1030(a)(2)(c), (c)(2)(B)(i), (c)(2)(B)(ii): Unauthorized Access to a Protected Computer to Obtain Information; 18 U.S.C. § 1028A(a)(1): Aggravated Identity |
| Defendants. | Theft; 18 U.S.C. § 2(a): Aiding and Abetting; 18 U.S.C. §§ 981(a)(1)(C), 982, 1030, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS AND DEFINITIONS

At times relevant to this Indictment:

A.   Defendants

1.   Defendant ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay" ("CARLSON"), was a resident of the Central District of California.

2.   Defendant CALVIN ANDREW WESTBERG ("WESTBERG") was a resident of the District of Minnesota.

B.   Accounts

    3.   Facebook, Inc. ("Facebook"), located in Menlo Park, California, operated computers used by subscribers of both the Facebook and Instagram services all over the world in interstate and foreign commerce and communications.

    4.   Google LLC ("Google"), located in Mountain View, California, operated computers used by subscribers all over the world in interstate and foreign commerce and communications.

    5.   Microsoft Corporation ("Microsoft"), located in Redmond, Washington, operated computers used by subscribers of the Microsoft, Hotmail and Skype services all over the world in interstate and foreign commerce and communications.

    6.   AT&T Corporation ("AT&T") was a telecommunications company headquartered in Dallas, Texas that operated AT&T Wireless.

    7.   PayPal, Inc. ("PayPal") operated a worldwide online payment system that supported online money transfers, headquartered in San Jose, California.

    8.   Coinbase was a company specializing in the exchange of digital currency, headquartered in San Francisco, California.

    9.   Binance was a Taiwan-based cryptocurrency exchange.

C.   Definitions

    10.   A Subscriber Identity Module ("SIM") card was a chip located inside a cell phone that stored information identifying and authenticating a cell phone subscriber.  When a cell phone carrier reassigned a phone number from one physical phone to another -- such as when a customer purchased a new phone but wanted to retain the same number -- the carrier switched the assignment of the cell phone

1 | number from the SIM card in the old phone to the SIM card in the new
2 | phone, a process sometimes called "porting" a number.
3 |     11. "SIM swapping" referred to the process of inducing a
4 | carrier to reassign a cell phone number from the legitimate
5 | subscriber or user's SIM card to a SIM card controlled by another
6 | without the legitimate subscriber or user's authorization.
7 |     12. "Cryptocurrency" was an umbrella term for digital currency
8 | in which encryption and blockchain technologies were used to regulate
9 | the generation of units of currency and verify the transfer of funds,
10 | generally with relative anonymity.  Bitcoin, Ethereum, and Litecoin
11 | were all cryptocurrencies.  Some cryptocurrency users maintained
12 | online "wallets" with cryptocurrency exchanges such as Coinbase and
13 | Binance.

COUNT ONE

[18 U.S.C. § 1349]

13.   The Grand Jury re-alleges and incorporates here paragraphs 1 through 12 of the Introductory Allegations and Definitions of this Indictment.

A.   OBJECT OF THE CONSPIRACY

14.   Beginning on an unknown date, but no later than on or about December 9, 2017, and continuing through at least December 11, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay" ("CARLSON"), and an unindicted coconspirator ("UICC"), together with others known and unknown to the Grand Jury, knowingly conspired to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

15.   The object of the conspiracy was to be accomplished, in substance, as follows:

     (a)   Defendant CARLSON and the UICC would identify potential victims who they believed possessed cryptocurrency.

     (b)   Defendant CARLSON and the UICC would obtain personal identifying information for the victim and the victim's cell phone number.

     (c)   With defendant CARLSON listening through his computer, the UICC would call employees at cell phone carrier stores while posing as an employee of the carrier at another local store.  The UICC would claim that the computer at his purported store was inoperative and that he was with a customer who needed to have their

4

1  number ported to a new device, and would request that the employees

2  port the number for him.

3        (d)  The UICC would cause the victim's cell phone number to

4  be SIM swapped by using false information and representations to

5  convince the carrier's employee to port the number from the victim's

6  cell phone to a cell phone controlled by defendant CARLSON, the UICC

7  or other coconspirators.

8        (e)  Defendant CARLSON and the UICC would cause password-

9  reset information and codes for the victim's email account to be sent

10  via text message to the phone controlled by defendant CARLSON, the

11  UICC, or other coconspirators.

12       (f)  Defendant CARLSON and the UICC would then access the

13  victim's email account, obtain information, and identify the victim's

14  financial accounts containing cryptocurrency.

15       (g)  Defendant CARLSON and the UICC or other coconspirators

16  would access the victim's financial accounts and change the

17  passwords.

18       (h)  Defendant CARLSON and the UICC or other

19  coconspirators, while accessing the victim's financial accounts

20  without authorization and posing as the victim, would request a

21  purchase of cryptocurrency.

22  C.   OVERT ACTS

23       16.  In furtherance of the conspiracy, and to accomplish its

24  object, defendant CARLSON and the UICC, together with others known

25  and unknown to the Grand Jury, on or about the dates set forth below,

26  committed and caused to be committed various overt acts, in the

27  Central District of California and elsewhere, including, but not

28  limited to, the following:

1     Overt Act No. 1:    On or before December 9, 2017, defendant

2  CARLSON and the UICC, or other coconspirators, obtained the cell

3  phone number for Victim 1 and another potential victim, as well as

4  the last four digits of Victim 1's social security number.

5     Overt Act No. 2:    On December 9 and 10, 2017, with defendant

6  CARLSON listening through his computer, the UICC called employees at

7  various AT&T cellular service stores while himself posing as an AT&T

8  employee, claiming that the computer at the UICC's store was down and

9  that the UICC was with a customer who needed to have their number

10  ported to a new device, and requested that the employees port the

11  number for him.

12     Overt Act No. 3:    On December 9, 2017, during one of the calls

13  to an AT&T store by the UICC, the UICC provided an AT&T employee with

14  a potential victim's phone number and address in an unsuccessful

15  attempt to convince the AT&T employee to port the phone number for

16  the potential victim.

17     Overt Act No. 4:    On December 10, 2017, while the UICC was

18  calling various AT&T stores to induce SIM swapping, defendant CARLSON

19  and another unindicted coconspirator communicated via Skype about

20  "the AT&T Method."

21     Overt Act No. 5:    On December 10, 2017, during one of the

22  calls to an AT&T store by the UICC, the UICC provided an AT&T

23  employee with Victim 1's cell phone number and the last four digits

24  of Victim 1's social security number.

25     Overt Act No. 6:    On December 10, 2017, as a result of the

26  UICC's false and fraudulent representations to the AT&T employee,

27  defendant CARLSON and the UICC caused Victim 1's cell number to be

28

1  SIM swapped by convincing that AT&T employee to port the number from
2  Victim 1's cell phone to a device controlled by defendant CARLSON.
3      Overt Act No. 7:   On December 10, 2017, defendant CARLSON, the
4  UICC, or other coconspirators, requested a password reset of Victim
5  1's Hotmail account, causing Microsoft to text a password reset code
6  to a cell phone device controlled by defendant CARLSON or other
7  coconspirators.
8      Overt Act No. 8:   On December 10, 2017, after receiving the
9  Microsoft password reset code, defendant CARLSON forwarded the code
10 to the UICC during an online chat between defendant CARLSON and the
11 UICC, so that the UICC or other coconspirators could reset the
12 password of Victim 1's Hotmail account and access the account without
13 authorization for the purposes of stealing Bitcoin from Victim 1.
14     Overt Act No. 9:   On December 10, 2017, while Victim 1's
15 Hotmail account was being accessed without authorization, in order to
16 identify Victim 1's cryptocurrency accounts and to steal
17 cryptocurrency from Victim 1, the UICC stated to defendant CARLSON
18 aloud via Google Hangouts, "What are we looking for?  Bitcoin."
19     Overt Act No. 10:   On December 10, 2017, defendant CARLSON and
20 the UICC, or other coconspirators, without authorization, then
21 accessed Victim 1's Hotmail account to identify Victim 1's
22 cryptocurrency and related financial accounts in order to steal
23 Bitcoin from Victim 1.
24     Overt Act No. 11:   On December 10, 2017, defendant CARLSON and
25 the UICC, or other coconspirators, without authorization, reset
26 Victim 1's Coinbase account password using two-factor authentication.
27     Overt Act No. 12:   On December 10, 2017, while accessing Victim
28 1's Coinbase account without authorization, defendant CARLSON and the

1   UICC, or other coconspirators, initiated a request for the purchase

2   of .6333 Bitcoin (then valued at approximately $10,000).

3       Overt Act No. 13:   On December 11, 2017, pursuant to the

4   coconspirators' fraudulent December 10, 2017 purchase request to

5   Coinbase, defendant CARLSON, the UICC, or other coconspirators caused

6   a transfer of approximately $10,000 to be initiated from Victim 1's

7   Bank of America account ending in 5471, which was linked to Victim

8   1's Coinbase account, over which defendant CARLSON and the

9   coconspirators then had control.

COUNT TWO

[18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(i), (c)(2)(B)(ii); 2(a)]

17. On or about December 10, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay," and an unindicted coconspirator, each aiding and abetting the other, intentionally accessed a computer without authorization and thereby obtained information from a protected computer, as that term is defined in Title 18, United States Code, Section 1030(e)(2)(B), that is, from the email server(s) of Microsoft Corporation, for the purpose of private financial gain and in furtherance of a criminal act, to wit, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349.

## COUNT THREE

[18 U.S.C. §§ 1028A(a)(1); 2(a)]

18.   Beginning on an unknown date, but no later than on or about December 9, 2017, and continuing through at least December 11, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendant ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay" ("CARLSON"), and an unindicted coconspirator, each aiding and abetting the other, knowingly transferred, possessed, and used, without lawful authority, means of identification that defendant CARLSON knew belonged to another person, during and in relation to the offense of conspiracy to commit wire fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

COUNT FOUR

[18 U.S.C. § 1349]

19.   The Grand Jury re-alleges and incorporates here paragraphs 1 through 12 of the Introductory Allegations and Definitions of this Indictment.

D.   OBJECT OF THE CONSPIRACY

20.   Beginning on an unknown date, but no later than on or about December 14, 2017, and continuing through at least January 2, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay" ("CARLSON"), and CALVIN ANDREW WESTBERG ("WESTBERG"), together with others known and unknown to the Grand Jury, knowingly conspired to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

E.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE
     ACCOMPLISHED

21.   The object of the conspiracy was to be accomplished, in substance, as follows:

        (a)   Defendants CARLSON and WESTBERG would identify potential victims who they believed possessed cryptocurrency.

        (b)   Defendants CARLSON and WESTBERG would conduct online research regarding their potential victims.

        (c)   Defendant CARLSON and/or unknown coconspirators, using false information and pretenses, would engage in SIM swapping in order to take control of a victim's cell phone number.

        (d)   Defendants CARLSON, WESTBERG, and/or unknown coconspirators would obtain unauthorized access to the SIM swapping victim's Facebook account.

11

1       (e)  Once they had access, defendants CARLSON, WESTBERG,
2  and/or unknown coconspirators would pose as the SIM swapping victim
3  and communicate with the victim's friends on Facebook and request
4  cryptocurrency, typically claiming that the cryptocurrency was needed
5  quickly for a business venture and offering to pay a premium because
6  there was not enough time to obtain the cryptocurrency from a
7  traditional exchange.

8       (f)  While communicating with the SIM swapping victim's
9  friends, defendants CARLSON and/or WESTBERG would specify
10  cryptocurrency wallets for the receipt of cryptocurrency.

11       (g)  By posing as the SIM swapping victim, defendants
12  CARLSON and/or WESTBERG would cause the SIM swapping victim's friends
13  to transfer funds into the cryptocurrency wallets that had been
14  specified.

15       (h)  Defendant CARLSON would receive the fraudulently
16  obtained cryptocurrency either directly or indirectly into one of his
17  cryptocurrency wallets.

18       (i)  Defendant CARLSON would transfer a portion of the
19  cryptocurrency to defendant WESTBERG's cryptocurrency wallets.

20  F.   OVERT ACTS

21     22.  In furtherance of the conspiracy, and to accomplish its
22  object, defendants CARLSON and WESTBERG, together with others known
23  and unknown to the Grand Jury, on or about the dates set forth below,
24  committed and caused to be committed various overt acts, in the
25  Central District of California and elsewhere, including, but not
26  limited to, the following:

27

28

1      Overt Act No. 1:    On December 23, 2017, defendant WESTBERG

2    conducted online searches for Victim 2 and visited Victim 2's Twitter

3    page.

4      Overt Act No. 2:    On December 23, 2017, while Victim 2 was

5    overseas, defendant CARLSON and/or other unknown coconspirators SIM

6    swapped Victim 2's cell phone number to a phone controlled by

7    defendant CARLSON or another coconspirator.

8      Overt Act No. 3:    On December 23, 2017, defendant CARLSON or

9    other coconspirators caused password reset information and codes for

10   Victim 2's Facebook account to be sent to defendant CARLSON or

11   another coconspirator.

12     Overt Act No. 4:    Between December 23, 2017 and December 24,

13   2017, defendant WESTBERG accessed, without authorization, Victim 2's

14   Facebook account.

15     Overt Act No. 5:    On December 23, 2017, defendants CARLSON

16   and/or WESTBERG, posing as Victim 2, and communicating through Victim

17   2's hacked Facebook account, contacted M.S. about an investment

18   opportunity, asking, "Hey, do you have any bitcoin?  I have a big

19   investor with me looking to get into crypto!," and offering to pay

20   for the cryptocurrency "plus 10 percent" because the "big investor"

21   could not wait for the transfer to be done through Coinbase.

22     Overt Act No. 6:    On or about December 23, 2017, because M.S.

23   advised he was unable to provide the requested cryptocurrency,

24   defendants CARLSON and/or WESTBERG or other coconspirators contacted

25   Victim 3, a friend of M.S., to request cryptocurrency for the

26   purported business transaction.

27     Overt Act No. 7:    On December 23, 2017, in an effort to prove

28   to Victim 3 that the business opportunity was legitimate and induce

1   Victim 3 to provide cryptocurrency, defendant CARLSON sent a test

2   payment of $1.00 from defendant CARLSON's PayPal account ending in

3   6281 to Victim 3's PayPal account.

4      Overt Act No. 8:    On December 23, 2017, after sending the

5   $1.00 test payment, defendants CARLSON and WESTBERG caused Victim 3

6   to send approximately one Bitcoin, then the equivalent of

7   approximately $14,000, to a wallet ending in JVSq.

8      Overt Act No. 9:    On December 23, 2017, posing as Victim 2 and

9   communicating through Victim 2's hacked Facebook account, defendants

10  CARLSON and/or WESTBERG contacted Victim 4 with a purported business

11  opportunity, and requested cryptocurrency from Victim 4 in exchange

12  for various premiums to be paid back to Victim 4, purportedly in

13  order to avoid waiting for the funds to clear from a traditional

14  cryptocurrency exchange, stating, "Takes 8 days for the exchanges to

15  get it into your wallet. Yes, I have an investor with me that's

16  willing to pay well. I cant [sic] wait for coinbase."

17     Overt Act No. 10:   On December 23, 2017, defendants CARLSON and

18  WESTBERG caused Victim 4 to send approximately .30226 Bitcoin, then

19  the equivalent of approximately $4,544.58, to a wallet ending in

20  HDHjy.

21     Overt Act No. 11:   On December 23, 2017, defendants CARLSON and

22  WESTBERG caused Victim 4 to send approximately 13.85255 Litecoin,

23  then the equivalent of approximately $4,003.52, to defendant

24  CARLSON's Coinbase wallet ending in bR8a8.

25     Overt Act No. 12:   On December 23, 2017, defendants CARLSON and

26  WESTBERG caused Victim 4 to send approximately 3.00063 Ethereum, then

27  the equivalent of approximately $2,124.59, to defendant CARLSON's

28  Coinbase wallet ending in 60Ba5.

1    Overt Act No. 13:   On December 23, 2017, defendant CARLSON sent

2    a payment of approximately 1.44989 Ethereum, then the equivalent of

3    approximately $1,000.43, from defendant CARLSON's Coinbase wallet

4    ending in 60Ba5 to defendant WESTBERG's Coinbase wallet ending in

5    62F5c.

6    Overt Act No. 14:   On December 23, 2017, defendant CARLSON sent

7    a payment of approximately 6.0025506 Litecoin, then the equivalent of

8    approximately $1,670.44, from defendant CARLSON's Coinbase wallet

9    ending in bR8a8 to defendant WESTBERG's Coinbase wallet ending in

10   zLaoV.

11   Overt Act No. 15:   On December 23, 2017, defendant WESTBERG

12   sent a payment of approximately 1.0818825 Ethereum, then the

13   equivalent of approximately $750.44, from defendant WESTBERG's

14   Coinbase wallet ending in 62F5c to defendant CARLSON's Coinbase

15   wallet ending in 77f88.

16   Overt Act No. 16:   On December 23, 2017, defendants CARLSON and

17   WESTBERG caused Victim 4 to send approximately 6.0025512 Litecoin,

18   then the equivalent of approximately $1,679.69, to defendant

19   CARLSON's Coinbase wallet ending in WwPis.

20   Overt Act No. 17:   On December 23, 2017, defendants CARLSON and

21   WESTBERG caused Victim 4 to send approximately 1.70063 Ethereum, then

22   the equivalent of approximately $1,174.96, to defendant CARLSON's

23   Coinbase wallet ending in 6d097.

24   Overt Act No. 18:   On December 23, 2017, defendants CARLSON and

25   WESTBERG caused Victim 4 to send approximately .0287879 Bitcoin, then

26   the equivalent of approximately $412.27, to a wallet ending in 2hUxf.

27

28

1    Overt Act No. 19:    On December 23, 2017, defendants CARLSON and

2    WESTBERG caused Victim 3 to send approximately 1 Bitcoin, then the

3    equivalent of approximately $14,715.00, to a wallet ending in yJVSq.

4    Overt Act No. 20:    On December 23, 2017, defendant CARLSON

5    received into his Coinbase wallet ending in WwPis a payment of

6    approximately .001 Ethereum, then the equivalent of approximately

7    $.66, from Victim 4.

8    Overt Act No. 21:    On January 2, 2018, defendant CARLSON

9    received into his Binance wallet ending in bgRBo Victim 3's and

10   Victim 4's Bitcoin from the wallets ending in yJVSq, HDHjy and 2hUxf.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT FIVE

[18 U.S.C. §§ 1030(a)(2)(C), (c)(2)(B)(i), (c)(2)(B)(ii); 2(a)]

23.   On or about December 23, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay," and CALVIN ANDREW WESTBERG, each aiding and abetting the other, intentionally accessed a computer without authorization and thereby obtained information from a protected computer, as that term is defined in Title 18, United States Code, Section 1030(e)(2)(B), that is, from the servers of Facebook, Inc., for the purpose of private financial gain and in furtherance of a criminal act, to wit, conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349.

COUNT SIX

[18 U.S.C. §§ 1028A(a)(1); 2(a)]

24.  Beginning on an unknown date, but no later than on or about December 14, 2017, and continuing through at least January 2, 2018, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY JOSEPH CARLSON, also known as ("aka") "A.J.," aka "Ajay"  ("CARLSON"), and CALVIN ANDREW WESTBERG ("WESTBERG"), each aiding and abetting the other, knowingly transferred, possessed, and used, without lawful authority, means of identification that defendants CARLSON and WESTBERG each knew belonged to another person, during and in relation to the offense of conspiracy to commit wire fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count Four of this Indictment.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.     Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One, Three, Four and Six of this Indictment.

2.     Any defendant so convicted shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

## FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 1030]

1.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982(a)(2) and 1030, in the event of any defendant's conviction of the offenses set forth in either of Counts Two or Five of this Indictment.

2.    Any defendant so convicted shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

(b)    Any property used or intended to be used to commit the offense; and

(c)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1030(i), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the

1   court; (d) has been substantially diminished in value; or (e) has

2   been commingled with other property that cannot be divided without

3   difficulty.

4

5                                              A TRUE BILL

6

7                                                    /S/
                                               _____
8                                              Foreperson

9   TRACY L. WILKISON
    Acting United States Attorney
10

11  [signature]

12  CHRISTOPHER D. GRIGG
    Assistant United States Attorney
13  Chief, National Security Division

14  CAMERON L. SCHROEDER
    Assistant United States Attorney
15  Chief, Cyber & Intellectual
       Property Crimes Section
16
    LISA E. FELDMAN
17  Assistant United States Attorney
    Cyber & Intellectual Property
18     Crimes Section

19

20

21

22

23

24

25

26

27

28